**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ADA LEE CHATTERTON,

        Plaintiff,

v.                                    CIVIL  ACTION  NO.  3:07-0167

CUNA MUTUAL INSURANCE SOCIETY,
THE UNION LABOR LIFE INSURANCE
COMPANY and STONEBRIDGE LIFE
INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court is Defendant Union Labor Life Insurance Company's Motion for Summary Judgment [Docket No. 30]. Based upon the briefs and oral arguments and for the reasons mentioned below, this Court **GRANTS** the motion.

**FACTS**

Myron Chatterton ("Chatterton") was a member of the International Association of Machinists and Aerospace Workers ("IAM"), Huntington Local 104. Chatterton received certain insurance options, including death benefits from the Union Labor Life Insurance Company ("ULLICO"). Chatterton died on October 17, 2004.

On October 17, 2006, Chatterton's wife, Ada Lee Chatterton ("Plaintiff") filed suit in the Circuit Court of Wayne County, West Virginia alleging, *inter alia*, breach of contract against ULLICO for failure to pay Plaintiff the proceeds of Chatterton's accidental death benefit provided by his insurance policy.

On March 15, 2007, Defendants properly removed the action to this Court based on diversity jurisdiction.  Subsequently, on September 10, 2007, Defendant ULLICO filed a Motion for Summary Judgment based upon ERISA preemption.  After a hearing on October 22, 2007, Plaintiff filed a Supplemental Response and thereafter Defendants filed a Supplemental Reply, both of which detailed the additional arguments made during the hearing.

## DISCUSSION

Defendant ULLICO argues that ERISA preempts Plaintiff's state law breach of contract claim so that the Court should grant summary judgment.  Plaintiff first responds that the claims are not preempted by ERISA because the plan at issue was not established or maintained by an employer or an employee organization or both.  Plaintiff also responds that the claims fall within ERISA's "safe harbor" provision so that ERISA does not preempt Plaintiff's breach of contract claim.

### Summary Judgment Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**ERISA Definition**

For ERISA to apply, "there must be (1) a plan, fund or program, (2) established or maintained (3) by an employer, employee organization, or both, (4) for the purpose of providing a benefit, (5) to employees or their beneficiaries." *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 417 (4th Cir. 1993). ERISA preempts state law when the state law relates to an employee benefit plan. *Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 187 (4th Cir. 2002). Under ERISA § 514(a) (29 U.S.C. § 1144(a)),

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added). "The initial analytical step in resolving the question of preemption, therefore, is to address whether the purported claim *relates* to any employee benefit plan." *Custer v. Pan American Life Ins. Co.* 12 F.3d 410, 419 (4th Cir. 1993). "The phrase 'relates to' is given a broad, common-sense meaning - 'a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Id.* at 419 *citing Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97 (1983).

When ERISA preemption is asserted as a defense, it is "ordinary conflict preemption." *Darcangelo*, 292 F.3d at 187. Ordinary conflict preemption means that even if the state claim is preempted by ERISA § 514, "without more" the preemption "does not convert a state claim into an action arising under federal law." *Darcangelo*, 292 F.3d at 187 *citing Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). "Thus, when ERISA is simply asserted as a defense to a state law claim, the state claim is not converted into a federal claim." *Decarangelo,* 292 F.3d at 187.

In light of Congress's objectives in establishing ERISA's preemption clause in section 514, "the Supreme Court has explained that Congress intended to preempt at least three categories of state law under § 514: (1) laws that mandate employee benefit structures or their administration, (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices, and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provision." *Darcangelo*, 292 F.3d at 190 *citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658-59 (1995).

If, however, the doctrine of complete preemption applies, an "ordinary state common law complaint" is converted "into one stating a federal claim." *Id. citing Metropolitan Life*, 481 U.S. at 65. This relates to the well-pleaded complaint rule such that "because the state claims in the complaint are converted into federal claims, the federal claims appear on the face of the complaint." *Id. citing Metropolitan Life*, 481 U.S. at 63-65. "Thus, when a complaint contains state law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims." *Id.* at 187.

Here, the first issue is whether ERISA applies generally. Based on the definition of an ERISA welfare benefit plan, Plaintiff contends that ERISA does not apply because the plan was not

established or maintained by an employer or an employee organization or both.  Plaintiff does not question the applicability of the other requirements.[1]

Based on the definition of "employee organization" under ERISA, IAM qualifies as an employer.  Under 29 U.S.C. § 1002(4), ERISA defines "employee organization":

> The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

IAM qualifies as an employee organization in that it is a union that exists for the purpose, at the very least, of dealing with any matters incidental to employment relationships.  Even if there is no employee benefit plan, the IAM would meet the definition of "employer organization."

### Safe Harbor Provision

Thus, the remaining issue is whether IAM "established or maintained" an employee benefit plan such that the ULLICO insurance benefit was a part of the plan.  To determine whether an employer "established or maintained" an employee benefit plan for the purposes of ERISA, the Department of Labor issued a regulation, the "safe harbor" provision, which "clarifies the meaning of the phrase 'established or maintained by the employer.'" *Walls v. Lemmon,* 2007 WL 3046218 at *2 (S.D.W.Va. 2007) *quoting Hall v. Standard Ins. Co.,* 381 F.Supp.2d 526, 529 (W.D.Va. 2005).

---

[1]Plaintiff states in her Supplemental Memorandum that under ERISA, the term "employer" includes "Multiple Employer Welfare Arrangements" ("MEWA") and she acknowledges that the plan at issue is a MEWA.  Whether the plan constitutes a MEWA is not determinative here; the plan in place must meet the ERISA definition of "employee welfare benefit plan."

The safe harbor provision helps specify those programs that do not fall within ERISA.  This provision, 29 C.F.R. § 2510.3-1(j), states:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
>
> > (1) No contributions are made by an employer or employee organization;
> >
> > (2) Participation in the program is completely voluntary for employees or members;
> >
> > (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> >
> > (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administration of services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1.   "When a plan meets these four criteria, it is deemed not to have been established and maintained by the employer, thus it would not meet the requirements of the welfare benefit plan." *Walls,* 2007 WL 3046218 at *2 *quoting Hall,* 381 F.Supp.2d at 529.  "In close cases, courts have looked to the level of the employer's involvement to determine whether a particular plan was established or maintained by an employer." *Kerr v. United Teacher Associates Ins. Co.,* 313 F.Supp.2d 617, 619 (S.D.W.Va. 2004).  "If the employer merely facilitates the purchase of a group insurance policy paid for entirely by the employees, the employer is not establishing a plan." *Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 417 (4th Cir. 1993).  "An important factor in determining

whether a plan has been established is whether the employer's purchase of the policy is an expressed intention by the employer to provide benefits on a regular and long-term basis." *Kerr,* 313 F.Supp.2d at 619 *quoting Simpa v. Massachusetts Casualty Ins. Co.,* 987 F.2d 1006, 1012 (10th Cir. 2001) (citations omitted).

Defendants concede that both the second and fourth requirements are fulfilled and that only the first and third elements are at issue. As all four requirements must be met for the plan to fall within the safe harbor provision, it is sufficient that the Court find either the first *or* third element inapplicable.

To be clear, the AFL-CIO established a contract with ULLICO. As a member of the AFL-CIO, IAM was eligible to subscribe to the plan via a subscription agreement. After contracting to become a member of the plan, IAM made the plan available to its members. IAM sent a letter with its own logo on it, indicating that Chatterton and the other employees had the option of signing up for the insurance plans.

As was made explicit during oral arguments, and not contradicted by the supplemental briefs, the ULLICO insurance plan would not have been available to the Chattertons for purchase were it not for the agreement that linked IAM to ULLICO. As the Fifth Circuit made clear, employees such as Chatterton benefitted from the "unitary rate structure" that the union "was able to negotiate by bargaining" for the whole package. *House v. American United Life Ins.,* 499 F.3d 443, 449 (5th Cir. 2007). This means the employees "effectively received a premium discount or constructive contribution from the firm." *Id.* Therefore, even though there might not have been a direct contribution to the Chatterton's "no cost" insurance certificate, that certificate would only have been

available to purchase because of IAM's contributions to the general ULLICO plan and IAM's agreement to utilize said plan.

Thus, there were contributions by IAM to the ULLICO plan in the sense that IAM subscribed to the plan and made it available to its members.  As stated by the Seventh Circuit, "when the employer helps defray the cost of the employee's insurance, it is even clearer that the plan falls outside of the safe harbor." *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 537 (7th Cir. 2000). Because of these contributions by IAM, the first element is not met and the safe harbor provision cannot apply to the plan at issue.

While it is unclear whether IAM endorsed the plan by sending out the options to its members on its own letterhead, the Court need not determine so.  Once the plan does not meet all four requirements of the safe harbor provision, it is no longer protected from ERISA preemption.

**ERISA Preemption**

The conflict preemption section of ERISA § 514 makes clear that there is ERISA preemption since the plan meets the ERISA definition and the safe harbor provision does not apply.  Plaintiff's claim does not fall within the first two categories prescribed as preempted by ERISA (laws that mandate employee benefit structures or their administration, or laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices), so the only issue is whether Plaintiff's claim falls within the category as an "alternative enforcement mechanism."

Plaintiff's claims are for the proceeds of the accidental death benefit plan provided by Defendant ULLICO's insurance policy.  She claims that ULLICO breached its contract to provide the death benefits to her.  She is therefore attempting to use the state law cause of action for breach of contract to recover the benefits she claims are due to her.  Her state law claim inherently relates

to the employee benefit plan in which her husband participated.  Thus there is ERISA preemption based on conflict preemption.

Complete preemption under ERISA § 502 is also applicable.  Defendants indicate in the closing paragraph of the initial Memorandum in Support of the Motion for Summary Judgment that the claims here are completely preempted.  Defendants concede that the breach of contract claim could be brought as an enforcement of contractual rights under ERISA § 502(a)(1)(b).  Thus the breach of contract claim would not be inapplicable, but would be converted into a federal cause of action under ERISA.

Since there is ERISA preemption and Plaintiff's claims do not fall within the safe harbor provision, summary judgment is appropriate as to the state law contract claims; the claim is re-characterized as a claim arising under federal law for the enforcement of benefits under ERISA.

## CONCLUSION

For the reasons above, Plaintiff's breach of contract claim is preempted by ERISA and Defendant Union Labor Life Insurance Company's Motion for Summary Judgment is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties.

ENTER:      November 26, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE